UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    Case No. 18-CR-0042(1) (PJS/HB)

                        Plaintiff,

v.                                                        ORDER

DONTAY LAVARICE REESE,

                        Defendant.

Angela M. Munoz-Kaphing and John Docherty, UNITED STATES ATTORNEY'S
OFFICE, for plaintiff.

Dontay Lavarice Reese, pro se.

Defendant Dontay Reese pleaded guilty to one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1) and is awaiting sentencing. After pleading guilty, Reese moved to represent himself and to withdraw his plea. The Court conducted a lengthy hearing on those motions on March 27, 2019. At the hearing, the Court granted Reese's motion to represent himself and denied his motion to withdraw his plea. ECF No. 120.

This matter is before the Court on a series of motions filed by Reese—some to withdraw his plea and others for reconsideration of the Court's denial of his earlier motion to withdraw his plea. For the reasons that follow, all of the motions are denied.

*A. Background*

Reese was indicted on February 21, 2018, for a kidnapping that occurred on August 6, 2017. ECF No. 1. On that day, Reese offered the victim a ride home after the

victim became separated from her friends at a bar in downtown Minneapolis. The

victim got into a Jeep driven by Reese, but Reese then refused to follow the victim's

directions to her home. While they were still in Minnesota, the victim attempted to get

out of the Jeep multiple times, including by unbuckling her seat belt and opening the

passenger door. She also asked Reese to stop the Jeep so that she could get out. Reese

reached across the victim to shut the passenger door, drove erratically at high rates of

speed, called the victim vulgar names, and held the victim's head down multiple times

so that other drivers could not see her. Reese also told the victim that he was going to

take her several states away and prostitute her to make money. After Reese drove to

Wisconsin, the victim attempted to escape at least two more times. Reese physically

prevented her from escaping. He eventually pulled off the freeway, dragged the victim

to a wooded area, tied her to a tree, and raped her twice. Law enforcement arrived

shortly afterward and arrested Reese at the scene. *See generally* ECF No. 104 ¶ 2; ECF

No. 127 at 1.

Reese was in custody in Wisconsin until March 6, 2018, when he was transported

to Minnesota to make his first appearance that same day. ECF Nos. 2, 7, 12. According

to the FBI agents who transported him from Wisconsin, Reese was pleasant and chatty

during the trip, talking about a wide range of topics and even reciting from memory a

couple of poems that he had written.  ECF No. 21 at 4-5.[1]  Reese appeared perfectly

normal; he gave no indication of any confusion, memory problems, or mental illness.

*Id.* at 5.

At his first appearance, however, Reese refused to speak, identify himself, or

answer any questions.[2]  Attorney Matthew Mankey was appointed to represent him the

next day and an arraignment and detention hearing was scheduled for March 8.  ECF

Nos. 9, 11.  At that hearing, Mankey indicated that he was having trouble

communicating with Reese and asked for a competency evaluation.  That motion was

granted, and Reese was transported first to MCC San Diego and then to FDC SeaTac for

evaluation.

Reese did not cooperate with the evaluation.  According to the evaluation report,

Reese largely refused to participate in standard assessment procedures and associated

interviews.  ECF No. 21 at 1-2, 8-9.  Reese also claimed to be suffering a wide variety of

severe and unusual symptoms of mental illness.  In the words of the report, Reese

"endorsed psychological symptoms that are rarely seen in combination, extreme

symptoms, unusual symptom course, unusual hallucinations, and exhibited

---

[1]For this and any other document cited by ECF number, the Court cites the
document's internal pagination if that pagination does not match the pagination
generated by the Court's electronic docketing system.

[2]For hearings for which no transcript has been prepared, the Court has reviewed
the audio recordings.

suggestibility regarding the symptoms he was experiencing." *Id.* at 9. These symptoms included auditory hallucinations (he claimed that he hears the voice of "Mufasa," his dead dog, and the voices of "demons" who "are at war and nobody knows it"), visual hallucinations (he claimed that he sees Mufasa and a "black bald headed lady" who sometimes tells him what to do), an inability to distinguish fantasy from reality (he claimed that he could not tell real memories from things he had seen in movies), and an extremely poor memory (he claimed that he could not remember his own name and claimed not to recognize a psychologist whom he had met the day before). *Id.* at 3, 5, 6-7, 8.

But during recorded phone calls with friends and social interactions with other inmates, Reese exhibited no symptoms whatsoever—no memory problems, no cognitive impairments, and no signs of psychosis. To the contrary, he was talkative and even funny—and, in telephone calls he "presented as quite persuasive . . . , soliciting money, photographs, as well as engaging in sexually charged conversations and activities with the female caller." *Id.* at 6, 7. He was also able to remember names, dates, and previous conversations without any difficulty. *Id.* at 7. At one point, Reese was overheard telling another inmate that "I'll have 'em eating out of my hands in five days. This is easy work." *Id.* at 6. In short, Reese pretended to be mentally ill only when he was talking to judges, attorneys, or mental-health professionals. When talking

with anyone else, he acted perfectly normally.  Not surprisingly, the evaluators found that Reese was malingering— that is, faking symptoms of mental illness in an attempt to be found incompetent.  (According to the government, a Skype call that was later recorded by Reese's detention facility shows Reese and his current girlfriend laughing about his diagnosis of malingering.  ECF No. 51 at 10.)

After creating a lengthy delay and wasting considerable resources through his attempt to fake mental illness, Reese was transported back to Minnesota.  Reese then insisted that Mankey ask for a second evaluation—even though Reese had refused to cooperate with the first evaluation—and Reese claimed that he could not remember anything about his alleged crime.  ECF No. 40; ECF No. 51 at 4-6.  At his arraignment hearing on September 10 in front of Magistrate Judge Hildy Bowbeer, Reese refused to come to the podium, refused to state his name and date of birth, contended that his real name was "Tay" and that he had no last name, and claimed that Dontay Reese was his brother.  ECF No. 51 at 17-23; *see also* ECF No. 85 at 28-29.  (When he was evaluated at FDC SeaTac, Reese also claimed that Dontay Reese was his brother, but that time Reese said that his name was "Don" rather than "Tay."  ECF No. 21 at 7.)  Judge Bowbeer rejected Reese's request for another evaluation and rescheduled his arraignment for October 15.

On the morning of October 15, Reese refused to leave his cell at his detention facility and the U.S. Marshal had to arrange separate transportation for him. During the hearing, Reese was rude and disruptive and repeatedly insisted that he was not Dontay Reese. Reese later filed a frivolous appeal of his arraignment order, which the Eighth Circuit dismissed. ECF Nos. 69, 94.

Trial was scheduled to begin on November 13. ECF No. 54. On October 12, Reese filed a state-court lawsuit against Mankey, accusing him of negligence. ECF No. 60. The complaint described multiple interactions between Reese and Mankey, demonstrating that Reese had a very good memory. *Id.* The state court found that the action was frivolous and dismissed it after denying Reese's motion to proceed *in forma pauperis*. ECF No. 68, Exs. 1-4. But the action nevertheless caused Mankey's malpractice insurer to instruct him to move to withdraw. ECF No. 64. The Court held a hearing on that motion on November 5.

On the day of the hearing, Reese again refused to board the transport van and again separate transportation had to be arranged for him. At the hearing, Reese claimed that he had never seen the indictment and again tried to pretend that it was his brother, and not him, who had appeared at the earlier arraignment. ECF No. 85 at 9, 28-29. The Court found that Reese and Mankey had an irretrievable breakdown in their relationship, but warned Reese that it would not tolerate any more delaying tactics and

that he must cooperate with his new attorney, stop pretending to be incompetent, and stop disrupting the proceedings. *Id.* at 30-32.

Attorney Robert Richman—one of the most respected criminal-defense attorneys in Minnesota—agreed to represent Reese. As a result of Reese's change in counsel, trial had to be rescheduled to February 25, 2019. ECF Nos. 89, 91. Two weeks before trial, the parties notified the Court that Reese was prepared to plead guilty and a change-of-plea hearing was set for the morning of February 13. ECF No. 100. Yet again, Reese refused to get on the transport van. As a result, the hearing had to be rescheduled for later in the day, ECF No. 101, while special transportation was again arranged for Reese.

At the hearing, Reese began by saying that he did not want to enter a guilty plea. ECF No. 114 at 3. Richman explained that Reese had said an hour earlier that he did want to plead guilty, but had changed his mind immediately before walking into court. *Id.* The Court indicated that trial would proceed as scheduled and asked the parties to make a record of what the plea agreement would have entailed, so that Reese could confirm that he was aware of the plea offer and had chosen to reject it. *Id.* at 3-6. After listening to his attorney recite the terms of the government's offer, Reese told Richman that he did, in fact, want to plead guilty. *Id.* at 6-7. The Court addressed Reese directly, and Reese emphatically affirmed that he wanted to plead guilty. *Id.* at 7. The Court

then offered to adjourn the hearing so that Reese could take more time to think about his decision and talk to Richman, but Reese insisted that he wanted to go forward immediately. *Id.* The Court then conducted a painstakingly thorough Fed. R. Crim. P. 11 hearing, and, after admitting to a full and detailed factual basis, Reese pleaded guilty. *Id.* at 29-34, 36.

A few weeks later, Reese submitted a pro se letter asking to withdraw his guilty plea. ECF No. 109. In addition, at Reese's request, Richman filed a motion to withdraw as counsel, stating that Reese had decided that he wanted to represent himself. ECF No. 111. The Court scheduled a hearing on both matters for March 27, 2019. ECF No. 112. In the meantime, Reese sent multiple additional letters complaining about Richman and asking to withdraw his guilty plea. ECF Nos. 115-119. At the March 27 hearing, the Court closed the courtroom to everyone but Reese and Richman (and court staff), and the Court conducted an extensive colloquy under *Faretta v. California*, 422 U.S. 806 (1975). The Court also questioned Reese and Richman at length about Reese's purported bases for withdrawing his plea. Following the hearing, the Court granted Reese's request to represent himself and denied his request to withdraw his plea. ECF No. 120.

Since then, Reese has overwhelmed the Court with an endless stream of motions, letters, protests, requests, and other communications. This order addresses Reese's many motions to withdraw his plea.

### B. Motions to Withdraw

Rule 11(d)(2) provides that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." It is the defendant's burden to establish that a fair and just reason exists. *See United States v. Bastian*, 603 F.3d 460, 464 (8th Cir. 2010). "The district court may also consider any assertions of legal innocence, the amount of time between the plea and the motion to withdraw, and the prejudice to the government in granting the motion." *United States v. Mugan*, 441 F.3d 622, 630 (8th Cir. 2006). But if the defendant fails to show a fair and just reason for withdrawal, the court need not consider any other factor. *United States v. Maxwell*, 498 F.3d 799, 801 (8th Cir. 2007).

"When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *United States v. McHenry*, 849 F.3d 699, 705 (8th Cir. 2017) (citation and quotation marks omitted). "An assertion of innocence—even a swift change of heart after the plea—does not constitute a 'fair and just reason' to grant

withdrawal." *United States v. Alvarado*, 615 F.3d 916, 922 (8th Cir. 2010) (citation and quotation marks omitted).

At the change-of-plea hearing, the Court took great care to ensure that Reese's plea was voluntary, knowing, and intelligent. As noted, Reese began the hearing by stating that he no longer wanted to plead guilty, but Reese then changed his mind after the parties put the details of the proposed plea agreement on the record. The Court repeatedly offered Reese the opportunity to take more time to think about his decision. ECF No. 114 at 7 ("Take as much time as you need."); *id.* (offer to adjourn the hearing so that Reese could talk to his attorney); *id.* at 8-9 ("If you wish to talk to Mr. Richman at any time today, you're welcome to do so. So if I ask you a question and you're not sure how to answer my question, just tell me you'd like to talk to Mr. Richman and I'll give you as much time as you need."); *id.* at 9 ("And if at any time today you're having second thoughts about going forward, just tell me. We'll stop, and we'll send you back to Sherburne County, and I don't mind at all. . . . I just want to make sure you're comfortable with whatever you decide to do today.").

The Court also emphasized that Reese should ask the Court to repeat or clarify anything that he did not hear or understand and admonished him not to say that he understood something unless he really did understand it. *Id.* at 10. The Court stressed the importance of ensuring that Reese understood everything before he pleaded guilty

and warned him that, after he pleaded guilty, he would not be able to change his mind. *Id.* at 10-11.

Having received all of these warnings, admonishments, and offers of extra time, Reese then testified under oath that he had read the indictment, that he had fully discussed the charges with Richman, that Richman had explained the charges and answered all of his questions, that he had told Richman everything that he wanted Richman to know about his case, and that he was satisfied with Richman's services, *id.* at 15, 20, 23; that no one had forced, threatened, or coerced him to plead guilty, that he was pleading guilty voluntarily and of his own free will, and that he was pleading guilty because he is in fact guilty of the charged crime, *id.* at 35; and that he understood that he was giving up the right to a trial and other associated rights, *id.* at 19-20.

Reese further admitted under oath to every element of the charged offense. He admitted that he had offered the victim a ride, refused to follow her directions, prevented her from escaping, held her for his own benefit and purpose while they were still in Minnesota, and willfully transported her to Wisconsin where he prevented her from escaping at least two more times, physically restrained her, and raped her twice. *Id.* at 30-32. He also admitted that he was on probation when he committed the offense, but corrected the jurisdiction in which he was on probation, *id.* at 32-33, thus demonstrating both that he was paying close attention and that his memory was fine.

Reese makes a number of somewhat vague and rambling arguments for withdrawing his plea. Many of those arguments—such as Reese's claim that his counsel coerced him into pleading guilty—are contradicted by Reese's own testimony under oath at the change-of-plea hearing. Other arguments were already addressed and rejected by the Court at the March 27 hearing.[3] For example, Reese repeatedly claims that newly discovered evidence will establish his innocence. This is the same allegation that Reese made in his earlier motion to withdraw. As at the March 27 hearing, Reese claims that a third person was in the Jeep and contends that evidence from one of his three cell phones[4] would establish that person's presence and provide

---

[3]Reese contends that the Court erred in considering his earlier pro se motion to withdraw his plea at the March 27 hearing because he was still represented by counsel. ECF No. 126. Reese is incorrect. Before considering Reese's motion to withdraw his plea, the Court first heard and granted Reese's motion to represent himself. ECF No. 149 at 60-61. Accordingly, at the time that the Court considered Reese's first motion to withdraw his plea, Reese was representing himself. Setting that aside, while a court is not *required* to accept pro se motions from a represented defendant, it may choose to do so. *See Fiorito v. United States*, 821 F.3d 999, 1003-04 (8th Cir. 2016).

Reese also seems to contend that the change-of-plea hearing was not conducted in conformity with the requirements of Rule 11. ECF No. 153. But Reese no where explains how the Court supposedly violated Rule 11, and the transcript of the change-of-plea hearing demonstrates that the Court fully complied with the rule. *See* ECF No. 114.

[4]The three cell phones are in law-enforcement custody. As Richman explained at the March 27 hearing, the government produced all of the data from two of the three cell phones but only partial data from the third because law enforcement was unable to access all of it. ECF No. 150 at 34-35.

other evidence of his innocence. Reese also contends that a missing letter from the victim would provide exculpatory evidence.

As the Court has already explained to Reese, even if such evidence exists, it is not newly discovered. Reese was in the Jeep himself and obviously would have been aware of the presence of a third person. Likewise, Reese was aware of his own phones, including the phone that he now contends contains exculpatory evidence. Indeed, as Richman explained in Reese's presence at the March 27 hearing, Richman was making arrangements with the government for Reese to unlock that phone but the parties ended that process when they began negotiating a plea agreement. ECF No. 150 at 34-35.

With respect to the allegedly missing letter, Richman explained that the victim had produced a handwritten statement, which was produced to the defense. ECF No. 150 at 21-22. A Minneapolis police report describes a handwritten statement from the victim but states that it could not be located in their records. ECF No. 127 at 1. Richman indicated that the statement referred to by the Minneapolis police is almost certainly the same handwritten statement that was produced in discovery. ECF No. 150 at 22. Reese, however, contends that the police report is evidence of a missing letter that contains evidence pointing to a different suspect; he claims that he was shown such a letter while he was still in custody in Wisconsin. *Id.* at 23.

The circumstances strongly suggest that Richman's surmise is correct and that there is no missing letter. Even if such a letter existed, however, Reese was obviously aware of it before he pleaded guilty, as he claims that he saw it while he was still in Wisconsin. Reese cannot withdraw his plea on the basis of evidence of which he was aware at the time of his guilty plea; such an argument amounts to nothing more than "belated misgivings about [the] wisdom" of his guilty plea, and pleader's remorse is not a sufficient basis for withdrawal. *Alvarado*, 615 F.3d at 920; *cf. United States v. Harvey*, 829 F.3d 586, 590 (8th Cir. 2016) (" Harvey's claims of innocence alone do not demonstrate a fair and just reason to allow him to withdraw his plea, particularly when these claims were based on information available to Harvey before he pled nolo contendere.").

And again, to be absolutely clear: The Court gives no credence whatsoever to Reese's assertions that he only recently remembered the existence of this or any other evidence. Knowing that he was certain to be found guilty and that he was facing a long prison sentence—and exhibiting the Antisocial Personality Disorder with which he has been diagnosed[5]—Reese has been doing everything in his power to disrupt these

---

[5]Reese's competency evaluation reported that his Antisocial Personality Disorder has been reflected in "a pervasive pattern of disregard for, and violation of, the rights of others . . . . Mr. Reese admitted to a long history of involvement with the criminal justice system, which has resulted in multiple incarcerations as well as infractions while in custody. He has a history of violence, impulsivity, aggressiveness, deceitfulness,

(continued...)

proceedings, including feigning incompetence.  As part of these efforts, Reese has lied

repeatedly about his memory—sometimes claiming a detailed memory of specific

conversations or events (when having a good memory is in his interests), and other

times claiming not even to remember his own name (when having a bad memory is in

his interests).

Reese also raises an argument concerning his competency evaluation and his

desire to present an insanity defense.  Reese contends that he never asked for a

competency evaluation and in fact told his lawyers that he was competent.  According

to Reese, he asked to be evaluated for purposes of presenting an insanity defense.

Reese claims that his lawyers tricked him by requesting a competency evaluation, as a

result of which Reese has lost credibility with the Court.  Furthermore, Reese claims, he

was unaware that his insanity defense had never been presented to the Court.  Instead,

he believed that the Court had rejected it—or was not taking it seriously—and, as a

result, Reese became despondent and decided to enter a guilty plea.  Finally, Reese

claims that he is, in fact, not guilty by reason of insanity.

These are simply more lies by Reese—lies that are belied by the record.  As

described above, Reese refused to speak at his very first court appearance in this

_____

[5](...continued)
irritability, and lack of empathy. . . . and expresses a high need for power and control."
ECF No. 21 at 9.

District.  At other appearances, Reese was rude and disruptive, pretended not to know

his own name, and pretended to be another person.  Under the circumstances, whatever

Reese may or may not have told his counsel off the record is irrelevant; the Court has an

independent obligation to ensure that defendants are competent to stand trial and

would have ordered a competency evaluation whether or not Reese's counsel requested

one.  *See United States v. Villareal*, 567 F. App'x 467, 470 (8th Cir. 2014) ("A trial court has

a due process obligation to hold a competency hearing, either on motion or *sua sponte*,

whenever evidence raises a sufficient doubt about the accused's mental competency to

stand trial." (citation and quotation marks omitted)).

Setting that aside, Reese's attempt to blame his counsel for creating the

impression that Reese is a malingerer is ludicrous.  Reese is solely responsible for his

decision to fake mental illness during court proceedings and during the evaluation

process.  And the Court has no sympathy for Reese's current complaint that his attorney

should have known that when Reese was faking mental illness, he was not faking it to

be found incompetent, but was instead faking it to be found not guilty by reason of

insanity.

As for Reese's claim that his counsel was ineffective for failing to pursue an

insanity defense and that he pleaded guilty because he was under the impression that

his insanity defense had somehow been rejected by the Court:  This, too, is belied by the

-16-

record. Richman explained at the March 27 hearing that he had, in fact, retained a psychologist to evaluate Reese both for purposes of sentencing and to consider possible defenses at trial. ECF No. 150 at 17, 25. These assertions are supported by the Court's internal financial records, which show that the Court approved Richman's November 2018 request to fund a psychological evaluation to determine if Reese "suffers from a mental illness that could create a defense at trial or offer mitigation in the event of a conviction." *See* Court Ex. 1. The final invoice of services indicates that the psychologist met with Reese in December 2018 and then again in January 2019 and issued a formal psychological report to Reese on April 12, 2019.[6] *Id.*

Although Reese had not yet received the final report before his guilty plea, he was obviously aware that he had twice been interviewed by his expert and that a report would be forthcoming. Reese does not contend that he ever saw a Court ruling with respect to an insanity defense or that anyone ever told him that the Court had issued such a ruling. And, as noted, Reese testified under oath at the change-of-plea hearing that Richman had answered all of his questions, that he had told Richman everything he wanted Richman to know about his case, and that he was satisfied with Richman's services. Reese also testified under oath that the reason why he was pleading guilty

---

[6]In all, the Court approved $7,500 in funding for this evaluation—three times the normal statutory limit. *See* 18 U.S.C. § 3006A(e)(3); *Guide to Judiciary Policy*, Vol. 7 § 310.20.10(A) (compensation table); Court Ex. 1.

was because he was, in fact, guilty of the crime charged. Any claim that Reese pleaded guilty because he mistakenly thought that the Court had rejected an insanity defense is therefore completely without merit.

Finally, with respect to Reese's claim that he is, in fact, not guilty by reason of insanity: Richman explained at the March 27 hearing that, after having numerous conversations with the psychologist, he was "very confident before the guilty plea that we did not have a defense based on mental illness." ECF No. 150 at 25-26. Absolutely nothing in the record suggests that, at the time that Reese kidnapped and raped his victim, Reese "was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17. To the contrary, every relevant fact in the record—such as Reese's prior conviction for raping a young woman; Reese's holding the victim's head down multiple times so that other drivers could not see her; and Reese's attempt to flee when law enforcement officers arrived at the scene of the rapes—establishes that Reese knew full well that he was breaking the law when he kidnapped and raped the victim. And notably, although Reese's psychologist issued his final report in April, Reese has not submitted that report to the Court in support of his motions to withdraw his plea. Reese has therefore failed to establish that he should be allowed to withdraw his plea so that he can attempt to prove by clear and convincing evidence that, at the time that he kidnapped and raped the victim, he did not "appreciate . . . the wrongfulness of his

acts." *Id.* Likewise, Reese cannot show either that his counsel was in any way ineffective or that he was prejudiced by his counsel's advice to plead guilty before having received the final report.

Reese has thus failed to establish a "fair and just" reason for withdrawing his plea. As a result, the Court need not consider any other factor. *Maxwell*, 498 F.3d at 801. It is worth emphasizing again, however, that Reese's repeated attempts to withdraw his plea are part of his long and extraordinary history of attempting to obstruct the progress of this case and inflict additional trauma on his victim. In *United States v. Morrison*, the Eighth Circuit held that forcing the victim of a sexual assault to undergo the emotional ordeal of preparing for trial a second time constituted a form of prejudice that weighed against permitting the defendant to withdraw his plea. 967 F.2d 264, 269 (8th Cir. 1992). The circumstances in this case are far more egregious than those in *Morrison*. At every step of the way, Reese has sought to drag out this case and disrupt the proceedings. Reese has faked incompetency, refused to speak in court, pretended to be a different person, refused to get on the transport from jail, brought a frivolous malpractice action against his first attorney, filed a frivolous appeal that was dismissed, and filed another frivolous appeal last week. As a result of his conduct, the government and the victims of both his current and previous offenses were forced to prepare for

trial more than once.  Under *Morrison*, this constitutes prejudice that weighs against permitting a defendant to withdraw his plea.

It is also worth noting that the evidence against Reese is overwhelming, even putting aside his sworn admissions that he kidnapped and raped the victim.  Witnesses near a gas station reported seeing a nude woman screaming for help and being forced back into a Jeep, which was then driven away with the gas nozzle still attached.  (Surveillance video from the gas station confirms the witness accounts.)  Shortly afterwards, one of the gas-station witnesses saw the same Jeep on the side of the freeway and called 911.  Law enforcement arrived and located Reese, who was standing on an overpass bridge.  Reese ran away but was caught when he emerged from the woods, fully naked, and attempted to jump over a guardrail and onto the freeway.  Meanwhile, the victim managed to free herself and ran to law enforcement, partially naked, screaming for help, and looking and sounding extremely distraught.  The victim still had on her wrists the shoelaces with which she had been bound while being raped.  DNA evidence ties Reese to the rape and additional evidence connects him to the Jeep.  *See* ECF No. 66 at 2-10 (summary of government's evidence); *cf. United States v. De Oliveira*, 623 F.3d 593, 597 (8th Cir. 2010) (noting that the strength of the evidence against the defendant and the timing of his motion to withdraw "would more than justify" denying defendant's motion to withdraw).

Even if Reese could establish some kind of basis for withdrawing his plea, therefore, his lengthy history of deceit and obstruction, the prejudice he has caused to the government and the victims, and the strength of the evidence against him would weigh heavily against permitting him to do so. Reese's motions to withdraw his plea are denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motions to withdraw his plea [ECF Nos. 123, 125, 126, 153, 160, 163] are DENIED.

Dated: May 29, 2019                              s/Patrick J. Schiltz
                                                 Patrick J. Schiltz
                                                 United States District Judge