UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-0042(1) (PJS/HB) |
| Plaintiff, | Case No. 21-CV-0974 (PJS) |
| v. | ORDER |
| DONTAY LAVARICE REESE, | |
| Defendant. | |

Defendant Dontay Reese pleaded guilty to one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1) and was sentenced to 301 months in prison and five years of supervised release. The United States Court of Appeals for the Eighth Circuit dismissed part of his direct appeal on the basis of a waiver in his plea agreement and rejected the remainder of his appeal on the merits.

This matter is before the Court on Reese's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons that follow, the motion is denied. Because the record conclusively demonstrates that Reese is not entitled to relief, no hearing is necessary.[1]  *See* Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts; 28 U.S.C. § 2255(b); *Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010).

---

[1]Several of Reese's claims appear to be procedurally barred or barred by the waiver in his plea agreement. *See* ECF No. 104 ¶ 12. Because the claims are so clearly meritless, however, the Court chooses to address them.

## I.  BACKGROUND

Reese was indicted on February 21, 2018, for a kidnapping that occurred on August 6, 2017.  ECF No. 1.  His crime was particularly brutal.  Reese offered his victim a ride home after the victim became separated from her friends at a bar in downtown Minneapolis.  The victim got into a Jeep driven by Reese, but Reese then refused to follow the victim's directions to her home.  While they were still in Minnesota, the victim attempted to get out of the Jeep multiple times, including by unbuckling her seat belt and opening the passenger door.  She also asked Reese to stop the Jeep so that she could get out.  Reese reached across the victim to shut the passenger door, drove erratically at high rates of speed, called the victim vulgar names, and held the victim's head down multiple times so that other drivers could not see her.  Reese also told the victim that he was going to take her several states away and force her to work as a prostitute.  After Reese drove to Wisconsin, the victim attempted to escape at least two more times.  Reese physically prevented her from escaping.  He eventually pulled off the freeway, dragged the victim into a wooded area, tied her to a tree, and raped her twice.  Law enforcement arrived shortly afterward and arrested Reese at the scene.  *See generally* ECF No. 104 ¶ 2; ECF No. 127 at 1.[2]

---

[2]For this and any other document cited by ECF number, the Court cites the document's internal pagination if that pagination does not match the pagination generated by the Court's electronic docketing system.

Reese was in custody in Wisconsin until March 6, 2018, when he was transported to Minnesota to make his first appearance on federal charges.  ECF Nos. 2, 7, 12.  According to the FBI agents who transported him from Wisconsin, Reese was pleasant and chatty during the trip, talking about a wide range of topics and even reciting from memory a couple of poems that he had written.  ECF No. 21 at 4–5.  Reese appeared perfectly normal; he gave no indication of any confusion, memory problems, or mental illness.  *Id.* at 5.

At his first appearance later that day, however, Reese refused to speak, identify himself, or answer any questions.[3]  Attorney Matthew Mankey was appointed to represent Reese the next day and an arraignment and detention hearing was scheduled for March 8. ECF Nos. 7, 9, 11.  At that hearing, Mankey indicated that he was having trouble communicating with Reese and asked for a competency evaluation.  That motion was granted, and Reese was transported first to MCC San Diego and then to FDC SeaTac to be evaluated.

Reese did not cooperate with the evaluation.  According to the evaluation report, Reese largely refused to participate in standard assessment procedures and associated interviews.  ECF No. 21 at 1–2, 8–9.  Reese also claimed to be suffering a wide variety of severe and highly unusual symptoms of mental illness.  In the words of the report, Reese "endorsed psychological symptoms that are rarely seen in combination, extreme

---

[3]For hearings for which no transcript has been prepared, the Court has reviewed the audio recordings.

symptoms, unusual symptom course, [and] unusual hallucinations, and [he] exhibited suggestibility regarding the symptoms he was experiencing." *Id.* at 9.  These symptoms included auditory and visual hallucinations, an inability to distinguish fantasy from reality, and an extremely poor memory (for example, he claimed that he could not remember his own name and claimed not to recognize a psychologist with whom he had met a day earlier). *Id.* at 3, 5–8.  Reese also claimed that he was not Dontay Reese, but rather Dontay's brother "Don." *Id.* at 7.

But during recorded phone calls with friends and social interactions with other inmates, Reese exhibited no symptoms whatsoever—no memory problems, no cognitive impairments, and no signs of psychosis.  He was able to remember names, dates, and previous conversations without any difficulty. *Id.*  At one point, Reese was overheard telling another inmate that "I'll have 'em eating out of my hands in five days.  This is easy work." *Id.* at 6.  In short, Reese pretended to be mentally ill only when he was talking to judges, attorneys, or mental-health professionals.  When talking with anyone else, he acted perfectly normally.  Not surprisingly, the evaluators found that Reese was malingering—that is, faking symptoms of mental illness in an attempt to be found incompetent.  (According to the government, a Skype call that was later recorded by Reese's detention facility shows Reese and his current girlfriend laughing about his diagnosis of malingering.  ECF No. 252 at 10.)

-4-

After creating a long delay and wasting considerable resources by faking mental illness, Reese was transported back to Minnesota.  Reese then insisted that Mankey ask for a second evaluation—even though Reese had refused to cooperate with the first evaluation—because, Reese said, he could not remember anything about his alleged crime. ECF No. 40.  At his arraignment hearing on September 10 in front of Magistrate Judge Hildy Bowbeer, Reese refused to come to the podium, refused to state his name, claimed not to know his date of birth, and contended that his real name was "Tay," that he had no last name, and that Dontay Reese was his brother.  ECF No. 251 at 17–23; *see also* ECF No. 85 at 28–29.  Judge Bowbeer rejected Reese's request for another evaluation and rescheduled his arraignment for October 15.  ECF No. 252 at 15; ECF No. 56.

On the morning of October 15, Reese refused to leave his cell at his detention facility, which forced the U.S. Marshal to arrange separate transportation for him.  During the hearing, Reese was rude and disruptive and repeatedly insisted that he was not Dontay Reese.  The prosecutor read the indictment aloud and, because Reese refused to enter a plea, the Court entered a plea of not guilty on his behalf.  *See* Fed. R. Crim. P. 11(a)(4).  Reese later filed a frivolous appeal of his arraignment order, which the Eighth Circuit dismissed.  ECF Nos. 69, 94.

Trial was scheduled to begin on November 13.  ECF No. 54.  A month before trial was to begin, Reese filed a state-court lawsuit against Mankey, accusing him of negligence. ECF No. 60.  The complaint described multiple interactions between Reese and Mankey,

demonstrating that Reese had been faking memory loss, just as he had earlier faked mental illness.  *Id.*  The state court found that the action was frivolous and dismissed it after denying Reese's motion to proceed *in forma pauperis*.  ECF No. 68, Exs. 1–4.  But the action nevertheless caused Mankey's malpractice insurer to instruct him to move to withdraw. ECF No. 64.  The Court held a hearing on that motion on November 5.  ECF No. 73.

On the day of the hearing, Reese again refused to board the transport van and again the U.S. Marshal was forced to arrange separate transportation for him.  At the hearing, Reese claimed that he had never seen the indictment and again tried to pretend that his brother, and not he, had appeared at the earlier arraignment hearing.  ECF No. 85 at 9, 28–29.  The Court found that Reese and Mankey had an irretrievable breakdown in their relationship and granted Mankey's motion to withdraw.  The Court also warned Reese that it would not tolerate any more delaying tactics and that he must cooperate with his new attorney, stop pretending to be incompetent, and stop disrupting the proceedings.  *Id.* at 30–32.  Following the hearing, the Court appointed attorney Robert Richman to represent Reese.  ECF No. 72.

As a result of Reese's change in counsel, trial had to be rescheduled to February 25, 2019.  ECF Nos. 89, 91.  Two weeks before trial, the parties notified the Court that they had reached a plea agreement and that Reese was prepared to plead guilty.  Richman had managed to negotiate an unusually favorable agreement for Reese—an agreement under Fed. R. Crim. P. 11(c)(1)(C) that, if accepted by the Court, would require the Court to

impose a sentence of 324 months minus the time that Reese had already spent in custody. ECF No. 104 ¶ 8. The agreement would also require the Court to "order that the sentence of imprisonment be served concurrently with the sentence to be imposed in *State of Wisconsin v. Dontay L. Reese*, Criminal Case No. 2017CF000159 (Jackson County, Wisconsin)," a state case arising out of the same events underlying Reese's federal charge. *Id.*; ECF No. 180 ¶ 91.

These parts of the plea agreement represented significant concessions by the government. Under the sentencing guidelines, Reese's recommended range was 360 months to life, ECF No. 180 ¶ 121, and the Bureau of Prisons would likely not have given him credit for the time he had spent in pretrial custody, ECF No. 104 ¶ 9. As the Court later told Reese, in the absence of the plea agreement, the Court would have given serious consideration to a life sentence and certainly would have given him a much longer sentence than the 324 months. ECF No. 149 at 75; ECF No. 246 at 35.

A change-of-plea hearing was set for the morning of February 13. ECF No. 100. On the morning of the hearing, Reese again refused to get on the transport van. As a result, the hearing had to be rescheduled for later in the day, ECF No. 101, while the U.S. Marshal again had to arrange special transportation for Reese. At the hearing, Reese began by saying that he did not want to enter a guilty plea. ECF No. 114 at 3. Richman explained that Reese had said an hour earlier that he did want to plead guilty, but had changed his mind immediately before walking into court. *Id.* The Court indicated that trial would

proceed as scheduled and asked the parties to make a record of what the plea agreement would have entailed, so that Reese could confirm that he was aware of the plea offer and had chosen to reject it. *Id.* at 3–6.

After listening to his attorney recite the terms of the government's offer, Reese told Richman that he did, in fact, want to plead guilty. *Id.* at 6–7. The Court addressed Reese directly, and Reese emphatically affirmed that he wanted to plead guilty. *Id.* at 7. The Court then offered to adjourn the hearing so that Reese could take more time to think about his decision and talk to Richman, but Reese insisted that he wanted to go forward immediately. *Id.* In addition to offering to adjourn the hearing, the Court repeatedly offered Reese the opportunity to take more time to think about his decision. *Id.* ("Take as much time as you need."); *id.* at 8–9 ("If you wish to talk to Mr. Richman at any time today, you're welcome to do so. So if I ask you a question and you're not sure how to answer my question, just tell me you'd like to talk to Mr. Richman and I'll give you as much time as you need."); *id.* at 9 ("And if at any time today you're having second thoughts about going forward, just tell me. We'll stop, and we'll send you back to Sherburne County, and I don't mind at all. . . . I just want to make sure you're comfortable with whatever you decide to do today.").

The Court also emphasized that Reese should ask the Court to repeat or clarify anything that he did not hear or understand and admonished him not to say that he understood something unless he really did understand it. *Id.* at 10. The Court stressed the

importance of ensuring that Reese understood everything before he pleaded guilty and warned him that, after he pleaded guilty, he would not be able to change his mind.  *Id.* at 10–11.

The Court then conducted a painstakingly thorough Fed. R. Crim. P. 11 hearing.  At that hearing, Reese pleaded guilty after admitting to a full and detailed factual basis.  *Id.* at 29–34, 36.  Reese testified under oath that he had read the indictment, that he had fully discussed the charges with Richman, that Richman had explained the charges and answered all of his questions, that he had told Richman everything that he wanted Richman to know about his case, that Richman had explained the plea agreement to him and answered all of his questions about it, and that he was satisfied with Richman's services.  *Id.* at 15, 20, 23.  Reese further testified under oath that no one had forced, threatened, or coerced him to plead guilty; that he was pleading guilty voluntarily and of his own free will; that he was pleading guilty because he is in fact guilty of the charged crime; and that he understood that he was giving up the right to a trial and other associated rights.  *Id.* at 19–20, 35.

Reese further admitted under oath to every element of the charged offense. Specifically, he admitted under oath that he had offered the victim a ride, refused to follow her directions, prevented her from escaping, held her for his own benefit and purpose while they were still in Minnesota, and willfully transported her to Wisconsin where he prevented her from escaping at least two more times, physically restrained her, and raped

her twice.  *Id.* at 30–32.  He also admitted that he was on probation when he committed the

offense—and, in fact, corrected a misstatement about the jurisdiction in which he was on

probation, *id.* at 32–33 (which demonstrated that he was paying close attention).

A few weeks later, Reese submitted a pro se letter asking to withdraw his guilty

plea.  ECF No. 109.  In addition, at Reese's request, Richman filed a motion to withdraw as

counsel, stating that Reese had decided that he wanted to represent himself.  ECF No. 111.

The Court scheduled a hearing on both matters for March 27, 2019.  ECF No. 112.  In the

meantime, Reese sent multiple additional letters complaining about Richman and asking

to withdraw his guilty plea.  ECF Nos. 115–119.  At the March 27 hearing, the Court

conducted an extensive colloquy under *Faretta v. California*, 422 U.S. 806 (1975).  ECF

No. 149 at 6–11, 52–60; ECF No. 150.  The Court also questioned Reese and Richman at

length about Reese's purported bases for withdrawing his plea.  ECF No. 150; ECF No. 149

at 65–67.  Following these inquiries, the Court granted Reese's request to represent

himself, denied his request to withdraw his plea, and appointed Richman as standby

counsel.  ECF No. 149 at 60, 74.

In an apparent attempt to force the court to allow him to withdraw his plea, Reese

overwhelmed the Court with an endless stream of motions, letters, and other

communications.  The Court addressed numerous requests for discovery, ECF Nos. 140,

146, 147, 151, 168, 175, 177, 186, 217, 236, and issued a lengthy order on multiple additional

requests to withdraw his guilty plea, ECF No. 178.  To accommodate Reese's demand for

access to all of the evidence that had been produced to his former counsel (some of which was subject to a protective order and therefore could not be sent to the jail, *see* ECF No. 26), the Court arranged for Reese to have three days at the courthouse to view the unredacted materials, *see* ECF Nos. 147, 168, 217 at 2.

Reese also complained about Richman's performance as standby counsel.  *See* ECF Nos. 167, 187.  The Court held a hearing on these complaints and, after concluding that Reese was making improper demands of Richman, relieved Richman of his duties as standby counsel and gave Reese the option of proceeding pro se with no standby counsel or having Richman take over his defense.[4]  ECF No. 247 at 13–18; *see also* ECF Nos. 188, 195, 217.

On July 2, 2019, after addressing approximately 60 motions and other requests from Reese, *see* ECF No. 217 at 1, the Court held a sentencing hearing at which it accepted the Rule 11(c)(1)(C) plea agreement and sentenced Reese to 301 months in prison, which represented the parties' stipulated sentence of 324 months less the 23 months that Reese had already spent in custody.  ECF No. 220 at 2.  At a later hearing, the Court imposed an order of restitution, and the Court entered an amended judgment reflecting that restitution order on February 24, 2020.  ECF No. 270.  On direct appeal, the Eighth Circuit affirmed in

---

[4]The Court later clarified for Reese that, as he had previously been informed, he was free to hire his own counsel.  ECF No. 195 at 3; *see* ECF No. 149 at 3.

part and dismissed in part on the basis of the appeal waiver in the plea agreement.  ECF Nos. 280–81, 285–86.

## II.  ANALYSIS[5]

### A.  Improper Arraignment

Reese first contends that his September 10, 2018 arraignment was improper. Specifically, Reese argues that Judge Bowbeer improperly entered a plea of not guilty on his behalf and that the issue of his competency should have been resolved before he was arraigned.

Reese's claims are meritless.  To begin with, Reese was not, in fact, arraigned on September 10; instead, after Reese refused to state his name or otherwise cooperate in the conduct of the hearing, Judge Bowbeer deferred the arraignment so that she could determine the proper way to proceed.  ECF No. 251 at 23, 27–28; ECF No. 45.  Reese was arraigned at a hearing on October 15, 2018, during which Mankey confirmed that Reese had been given a copy of the indictment and the prosecutor read the indictment aloud. ECF Nos. 56–57.  The arraignment therefore complied with Fed. R. Crim. P. 10.  Because Reese pretended to be someone else and refused to enter a plea, a plea of not guilty was

---

[5]Reese's three numbered grounds for relief each contain multiple claims and some of the claims listed in one ground overlap with claims listed in another ground. To the extent possible, the Court addresses the claims in the order that they are presented in Reese's motion, but for ease of discussion the Court has grouped together all of his claims of ineffective assistance of counsel.

entered on his behalf.  *See* Fed. R. Crim. P. 11(a)(4) ("If a defendant refuses to enter a

plea . . . the court must enter a plea of not guilty.").  There was nothing improper about

Reese's arraignment.  And even if Judge Bowbeer made some error, Reese's valid guilty

plea had the effect of waiving any objection to the arraignment procedure.  *See United*

*States v. Maldonado*, 241 F. App'x 343, 344 (8th Cir. 2007) (per curiam) (defendant's "valid

guilty plea forecloses his contention that it was error for him to be absent from the

arraignment on the superseding indictment"); *see also United States v. Dewberry*, 936 F.3d

803, 805 (8th Cir. 2019) (valid guilty plea operates as a waiver of all non-jurisdictional

defects and defenses).

    As for Reese's competency:  Contrary to Reese's argument, the issue of his

competency had, in fact, been resolved before his arraignment on October 15, 2018.

A June 28, 2018 psychological report found Reese to be competent, and on August 7, 2018,

Reese (through counsel) waived a competency hearing.  ECF No. 21; ECF No. 27 at 2.

Reese has never submitted any evidence that would undermine the determination that he

is competent, even though he was examined by an expert retained by his attorney.[6]  Thus,

---

[6]Before Reese pleaded guilty, his new attorney (Robert Richman) arranged for
another psychological evaluation, this time to determine if Reese suffered from a mental
illness that would provide either a defense at trial or evidence in mitigation.  *See* ECF
No. 178–1; ECF No. 150 at 17, 25–26.  Notably, despite his repeated claims of mental
illness, Reese has never submitted the report of that evaluation to the Court.  In
addition, Richman stated at a later hearing that, after numerous conversations with the
evaluating psychologist, he was "very confident before the guilty plea that we did not
                                                                    (continued...)

even if (as Reese argues) it was error to fail to hold a formal competency hearing, such

error was harmless.  *Cf. United States v. Mueller*, 661 F.3d 338, 353 (8th Cir. 2011) (a district

court has discretion to forgo additional hearings if the psychiatric report indicates

defendant is competent, and procedural errors at the hearing are harmless if the defendant

is in fact competent); *see also United States v. Villareal*, 567 F. App'x 467, 470–71 (8th Cir.

2014) (per curiam) ("[A]s Villarreal failed to raise sufficient doubt as to his competency to

stand trial, the district court did not abuse its discretion in refusing to hold a competency

hearing.").  The Court therefore rejects Reese's claim that he was improperly arraigned.

### B.  Ineffective Assistance

Reese next raises numerous claims of ineffective assistance of counsel.  To prevail

on a claim of ineffective assistance, a defendant must establish (1) "that counsel's

representation fell below an objective standard of reasonableness" and (2) prejudice, that

is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668,

688, 694 (1984).  "[A] court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance . . . ."  *Id.* at 689.

_____

[6](...continued)
have a defense based on mental illness."  ECF No. 150 at 25–26.

1.  Statute of Limitations under 28 U.S.C. § 2255

Reese argues that Richman was ineffective because he failed to advise Reese of the statute of limitations applicable to § 2255 motions.  Even assuming that such failure on the part of trial counsel would fall below an objective standard of reasonableness, this claim fails for lack of prejudice, as Reese's § 2255 motion is timely.  *See* 28 U.S.C. § 2255(f)(1) (one-year statute of limitations runs from date that conviction became final); *Clay v. United States*, 537 U.S. 522, 525 (2003) (conviction becomes final upon the expiration of the 90-day period for filing a petition for certiorari if no such petition is filed); ECF No. 280 (Eighth Circuit judgment dated April 10, 2020); ECF No. 295 (§ 2255 motion received April 13, 2021).

2.  Failure to Specify Ineffective Assistance Claims

In his plea agreement, Reese waived the right to bring a § 2255 motion on any basis other than ineffective assistance of counsel.  ECF No. 104 ¶ 12.  Reese contends that Richman was ineffective because he failed to specify whether Reese could allege ineffective assistance against (a) Mankey alone, (b) Richman alone, or (c) both Mankey and Richman.  This claim also fails for lack of prejudice, as the plea agreement does not limit Reese's ability to allege ineffective assistance against either of his former attorneys.

-15-

### 3.  Charges Pending in Wisconsin

Reese next claims that Richman was ineffective for failing to inform him that a guilty plea in this case could be used against him in his pending Wisconsin case.  There are at least two problems with this claim:

First, it is clear that, contrary to Reese's argument, the parties' plea negotiations took the Wisconsin case into account and indeed contemplated that Reese would be convicted of the Wisconsin charges.  The plea agreement (which Reese confirmed that he had read and understood) stipulates that "the Court should order that the sentence of imprisonment be served concurrently with the sentence *to be imposed*" in the Wisconsin case.  ECF No. 104 ¶ 8(c) (emphasis added).

Second, Reese's motion does not allege sufficient facts in support of this claim.  In particular, Reese does not claim that he has been convicted of any charges in the Wisconsin case, much less that he has been convicted of charges on which he would have been acquitted but for his guilty plea in this case or for which he has received a consecutive sentence.  Nor does Reese allege any other facts showing how his guilty plea in this case has affected his defense to the Wisconsin charges.[7]  *See Saunders v. United States*, 236 F.3d 950, 952–53 (8th Cir. 2001) (defendant's vague allegations of prejudice were

---

[7]The Court notes that Reese describes the Wisconsin case as "pending," *see* ECF No. 295 at 5, and the online Wisconsin docket indicates that the case remains pending. *See Wisconsin v. Reese*, Criminal Case No. 2017CF000159.

insufficient to entitle him to an evidentiary hearing on his § 2255 motion); *Lewis v. United States*, 585 F.2d 915, 917 (8th Cir. 1978) (to obtain an evidentiary hearing on a § 2255 motion, the defendant must allege facts that, if true, would entitle him to relief).

### 4.   Lack of Counsel at Presentence Meetings

Reese next argues that Richman was ineffective because he was not present at Reese's meetings with the probation officer responsible for writing his presentence investigation report ("PSR").  Reese contends that, as a result, he was unable to provide the probation officer with any mitigating information.

This claims fails for several reasons.  To begin with, Richman was not ineffective. Reese and Richman were scheduled to meet with the probation officer on February 21, 2019, but Reese refused to submit to the interview.  ECF No. 105; ECF No. 180 ¶ 92.  The probation officer informed the Court by letter that she would make a second attempt to interview Reese, likely in mid-March.  ECF No. 105.  Even if, contrary to the implication in the probation officer's letter, Richman did not appear for the February 21 meeting,[8] the letter makes clear that Reese would have another opportunity to meet with the officer.

---

[8]Notably, neither at his *Faretta* hearing, nor in the multiple written complaints about Richman that Reese sent to the Court in advance of that hearing, did Reese ever complain that Richman was not present for the initial interview.  *See* ECF Nos. 109, 115–19, 149–50.  Instead, Reese's complaints about Richman's absence began only after Reese began representing himself.  ECF No. 141; ECF No. 167 ¶ 3; ECF No. 247 at 3.

Under the circumstances, Richman's alleged absence from a single meeting at which

nothing happened did not amount to ineffective assistance.

By the time of the second interview in April 2019, Reese was representing himself

and Richman was serving as standby counsel.  ECF Nos. 120, 149–50; ECF No. 180 ¶ 92.

Because there is no constitutional right to standby counsel, Reese cannot base a claim of

ineffective assistance on Richman's absence from that meeting.  *See United States v. Foster*,

No. 98-2337, 230 F.3d 1364, 2000 WL 1511762, at *1 (8th Cir. Oct. 12, 2000) (per curiam)

(unpublished table decision) (defendant could not claim ineffective assistance of standby

counsel because there is no constitutional right to standby counsel); *see also United States v.

Keiser*, 578 F.3d 897, 903 (8th Cir. 2009) ("We have rejected the notion that the Sixth

Amendment guarantees a defendant an absolute right to standby counsel."); ECF No. 149

at 54–55 (warning Reese that, if he elected to represent himself, he cannot later complain

that he was deprived of effective assistance of counsel).

Even if Reese could show that Richman was ineffective, he cannot show prejudice.

To begin with, Reese does not identify any mitigating information that he was unable to

bring to the Court's attention.  Reese certainly knew how to convey information to the

Court.  He submitted dozens of motions, letters, and other communications, and he raised

numerous objections to his PSR.  *See* ECF Nos. 205–06.  At the sentencing hearing, Reese

was invited to say anything he wanted prior to being sentenced, and yet he did not

mention any mitigating evidence. (The Court nevertheless noted the presence of some mitigating factors in Reese's background. ECF No. 246 at 34.)

More importantly, Reese and the government entered into a plea agreement under Fed. R. Crim. P. 11(c)(1)(C), which, if accepted by the Court, would bind the Court to impose the sentence to which the parties had agreed. ECF No. 104 ¶ 8. The only question before the Court, then, was whether to accept the plea agreement and be bound by the parties' stipulation. The Court was concerned that the agreement was too lenient in light of the savagery of Reese's crime, his total lack of remorse, his attempts to inflict further cruelty on the victim by manipulating and prolonging the proceedings, and his lengthy and violent criminal background. *See* ECF No. 246 at 35–36 ("reluctantly" accepting the plea agreement, stating that Reese's sentence "is, if anything, too short," and explaining that, in the absence of the Rule 11(c)(1)(C) agreement, the Court would sentence Reese to a much longer sentence to be consecutive to his Wisconsin sentence and would not deduct time for his pretrial detention). Therefore, the only possible effect of any mitigating evidence would have been to make the Court more likely to accept the plea agreement. Because the Court *accepted* the plea agreement and imposed a sentence in accordance with the parties' stipulations, ECF No. 220, Reese cannot possibly show any prejudice from the lack of mitigating evidence.

### 5. Failure to Investigate Forged Documentation

Reese next claims that Richman failed to investigate "forged documentation" that could prove that Reese is innocent. Reese does not describe this alleged documentation nor provide any other details about this claim. The evidence against Reese was overwhelming, *see* ECF No. 149 at 75, ECF No. 178 at 20; Reese admitted under oath that he was guilty of the crimes charged; and Reese's bare-bones allegation fails to carry his burden to show either that Richman was ineffective or that Reese was prejudiced. *See Saunders*, 236 F.3d at 952–53 (defendant's allegations that "his trial counsel was ineffective for failing to call witnesses who could have provided an alibi to the cellular telephone fraud charges and who could have testified that [defendant] had nothing to do with the attempted murder for hire" were insufficient to entitle him to an evidentiary hearing on his § 2255 motion); *Lewis*, 585 F.2d at 917 (a § 2255 motion must allege facts that, if true, would entitle the defendant to relief).

### 6. Coaching

Reese next claims that Richman was ineffective because Richman coached Reese to plead guilty to a crime that Reese did not commit. This claim is meritless. As detailed above, the Court thoroughly questioned Reese at his change-of-plea hearing, and Reese answered the Court's questions under oath. Reese's sworn testimony completely refutes the claim that his guilty plea was anything other than the product of Reese's own voluntary choice.

### 7.  Lack of Standby Counsel at Sentencing

Reese next claims that he received ineffective assistance of counsel during sentencing because Richman was not available as standby counsel.  As described above, the Court relieved Richman of his duties as standby counsel prior to sentencing due to the improper demands that Reese made on him.  As there is no constitutional right to standby counsel, Reese cannot base a claim of ineffective assistance on the lack of standby counsel at his sentencing hearing.  *Keiser*, 578 F.3d at 903 (no constitutional right to standby counsel).

### 8.  Exculpatory Evidence

Reese next argues that Richman was ineffective as standby counsel because the Court denied Reese's pro se motion to obtain data from his cellular phones despite Richman telling Reese that he had "drawn up [the motion] correctly."[9]  ECF No. 295 at 14. If Richman was not ineffective, Reese reasons, then the government must have withheld exculpatory evidence.  Again, however, Reese cannot base a claim of ineffective assistance on Richman's performance as standby counsel.  Setting that aside, the bare fact that the Court denied a motion is an insufficient basis for contending that a lawyer's assistance was ineffective.  As for Reese's contention that the government withheld exculpatory evidence, Reese does not explain how the cell-phone data exculpates him, and his claim is therefore

---

[9]As Reese submitted multiple such motions, it is unclear to which motion he is referring.

too vague to require an evidentiary hearing.[10]  *See Saunders*, 236 F.3d at 952–53.  Finally, the

Court has issued many rulings on Reese's motions regarding cell-phone data, and his

argument is meritless for the reasons explained in those rulings.  *See* ECF Nos. 140, 147,

175; ECF No. 178 at 12–13; ECF Nos. 186, 217.

### 9.  Matthew Mankey

Reese also raises various complaints about his first attorney, Matthew Mankey,

including that Mankey misinformed him about the status of his cell phones and the

existence of exculpatory evidence on them; refused to talk to Reese for weeks; made a deal

for a reverse proffer without telling Reese; and told Reese's current girlfriend that Reese is

a pimp and "had two other girls in [his] truck that night."  ECF No. 295 at 15.

Reese was not prejudiced by any of this alleged ineffective assistance.  The Court

replaced Mankey with Richman, who obtained all of the data that the government was

able to extract from the cell phones and who was in the process of arranging for Reese to

help the government extract the remaining data at the time that Reese decided to plead

guilty.  ECF No. 140 at 2; ECF No. 150 at 34–35.  Reese was well aware of the status of the

cell phones at the time that he decided to plead guilty.  ECF No. 132 at 3 (Reese's pro se

memorandum recounting communications with Richman about the phones).  Reese

therefore cannot show prejudice from Mankey's alleged failures concerning the phones,

_____

[10]Reese's claims regarding these cell phones have changed over the course of this
case.  *See* ECF No. 175 at 2.

and none of the other alleged ineffective assistance had any impact on the outcome of this case.

Reese also contends that Mankey was ineffective for failing to object to the September 10, 2018 arraignment and failing to request a competency hearing. As discussed above, Reese was arraigned on October 15, not September 10; there was nothing improper about the October 15 arraignment; and Reese has never offered any evidence that would call into question the Court's finding of competency. Reese has therefore failed to show that Mankey was ineffective for failing to object to the arraignment or request a competency hearing. *See Paul v. United States*, 534 F.3d 832, 845 (8th Cir. 2008) (rejecting claim that counsel was ineffective for failing to further pursue issue of competency where two out of three pretrial psychiatric examinations concluded that defendant was competent).

## C. Denial of Motions to Withdraw Plea

Reese next claims that the Court abused its discretion by denying his motions to withdraw his guilty plea. Reese points to the fact that, at the beginning of the change-of-plea hearing, he said that he did not want to plead guilty. Reese claims that he was forced to stay at the hearing in a coercive environment in which he was coached to plead guilty.

Reese's claims are nonsense. As the record reflects, the Court repeatedly offered to adjourn the hearing and repeatedly assured Reese that he could take as much time as he wanted to talk to his attorney and make up his mind. Reese could have walked out of the

change-of-plea hearing at any time; the hearing went forward only because Reese insisted

that he wanted the hearing to go forward.  Moreover, the Eighth Circuit has already

rejected Reese's challenge to the voluntariness of his plea.  ECF No. 281 at 2.  Reese's claim

therefore fails both on the merits and because, "[w]ith rare exceptions, § 2255 may not be

used to relitigate matters decided on direct appeal."  *Sun Bear v. United States*, 644 F.3d 700,

702 (8th Cir. 2011) (en banc).

Reese also claims that the Court abused its discretion in not allowing him to

withdraw his plea because it should have held a competency hearing before permitting

him to plead guilty or represent himself.  Again, however, Reese offers no evidence that he

was incompetent.  Moreover, the Eighth Circuit rejected Reese's claim that the Court erred

in permitting him to represent himself.  ECF No. 281 at 2.  The Court did not err in failing

to hold a competency hearing before accepting Reese's guilty plea or granting his motion

to proceed pro se.

### D.  Speedy Trial

Finally, Reese makes a brief reference to "violation of speedy trial rights forged

document."  ECF No. 295 ¶ 13.  This appears to be a reference to a claim that Reese made

during the pendency of his criminal case, namely, that someone forged Reese's signature

on a document filed in support of a motion to continue the trial.  *See* ECF No. 150 at 26–27;

ECF No. 88.

As the Court has already explained in rejecting this claim, there is no requirement that a defendant sign a document or otherwise consent to his attorney's motion to exclude time under the Speedy Trial Act.  ECF No. 217 at 5–8.  Moreover, the Court properly continued the trial and excluded time because Reese had just requested (and been granted) new counsel, and his new attorney needed time to familiarize himself with the case.  *Id.*  Finally, by pleading guilty, Reese waived any claim to the denial of a speedy trial.  *United States v. Griffin*, 668 F.3d 987, 990 (8th Cir. 2012).  Consequently, even if Reese's signature was in fact forged—a claim for which Reese offers no proof—Reese's rights were not violated.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.   Defendant's motion to vacate, set aside, or correct his sentence [ECF No. 295] is DENIED.

2.   No certificate of appealability will issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  May 19, 2021                              s/Patrick J. Schiltz
                                                  Patrick J. Schiltz
                                                  United States District Judge